JOHN B. SMITH, Respondent, *v.* WILLIAM F. LENNON et al., Appellants.

SAME, Respondent, *v.* SAME, Appellants.

In an action to foreclose a mortgage it appeared that the mortgage was executed by the defendant L. pursuant to a written contract between him and one M., by the terms of which the latter was to advance money to purchase the premises; L. to take title, furnish money for repairs, and to execute to M. a mortgage for the amount advanced by him, and upon sale of the property each to share in the profits realized over and above the advances made. Defendant L. requested the court to find that he and M. were copartners in the purchase and ownership of the property, and that the mortgage in suit was simply a voucher and not valid against him. This request was refused. *Held*, no error; and that plaintiff was entitled to enforce the mortgage.

(Argued December 22, 1891; decided January 20, 1892.)

APPEALS from judgments of the General Term of the Supreme Court in the first judicial department, entered upon orders made April 17, 1891, which affirmed judgments in favor of plaintiff entered upon decisions of the court on trials at Special Term.

These actions were brought for the foreclosure of two mortgages given by the defendant William F. Lennon and wife to Arthur L. Meyer for $5,250 each, and by him assigned to the plaintiff.

The following is the opinion in full:

"The sole ground of this appeal rests upon the proposition that the trial court erred in refusing to find that the parties were copartners in the purchase and ownership of the two houses and lots upon which the plaintiff's mortgages were a lien; and in support of that proposition it is now urged that the defendant Lennon testified to the existence of such a partnership, and was entirely uncontradicted. I do not think his evidence goes so far, and if it does he is contradicted by all the proof produced which has been put in writing, and by every material fact and circumstance shown in the case.

"The plaintiff's theory was that the only partnership contemplated and agreed upon and described by that word was a sharing in the possible profits which might be realized upon a

sale of the houses after the advance of purchase-money had been paid back to Meyer, and the expenditure for repairs had been restored to Lennon; that one was to advance funds for the purchase and be secured to that extent by mortgages on the property, and the other to furnish money for improvements, holding the title in his own name, and both were to share in the anticipated profits which might be realized over and above the sums so advanced. I see nothing in Lennon's testimony as to the conversations which preceded the writings which is at all inconsistent with that theory, or which established the broader fact of a partnership in the land as well as in the expected profits. Lennon says at the outset that Meyer proposed the enterprise thus: 'I will go into partnership with you, Lennon; I will furnish the purchase-money and buy those houses, and you furnish the money to put in the alterations,' and adds that his answer was, 'will you put it down on paper, the general items of those remarks, and I will consider it over.' Thus no verbal agreement was made, but instead Meyer submitted a memorandum, the terms of which were later embodied in a written and formal contract, which both parties signed. All previous negotiations were merged in that instrument, which is not at all ambiguous, and which shows clearly that Lennon was to take the title and give mortgages to Meyer for the purchase-money advanced, and that the only agreement which could be described as a partnership was to share in the possible profits over and above the advances made. In strict accord with this agreement the title was in fact taken by Lennon, he gave the two mortgages to Meyer, describing them correctly as given for purchase-money, and when at a later period it was deemed advisable to add to the improvements, an indorsement was made upon the contract increasing the amount to be first paid before profits were realized.

"It is true that, at a later period of his testimony, Lennon represented Meyer as wanting the mortgages to secure his interest in the partnership, but even that expression, if ever used by Meyer, which the court was fully justified in disbelieving, is susceptible of the explanation that Meyer referred only to his advances and had no reference to any other or different interest in the land. Be that as it may, at the most

it merely raised a question of fact, which very justly and properly has been decided against the defendant.

"Both judgments should be affirmed, with costs."

*Samuel Untermeyer* for appellants.

*A. C. Franzioli* for respondent.

FINCH, J., reads for affirmance.
All concur.
Judgments affirmed.

---

FREDERICK A. SCHROEDER et al., Respondents, *v.* DANIEL FREY et al., Appellants.

(Argued December 22, 1891; decided January 20, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 17, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

*Melville H. Regensburger* for appellants.

*John Henry Hull* for respondents.

Agree to affirm; no opinion.
All concur.
Judgment affirmed.

---

SAMUEL S. HART, Appellant, *v.* JONES W. WILDER et al., Respondents.

(Argued December 23, 1891; decided January 20, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made March 9, 1891, which affirmed a judgment in favor of defend-